UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LYLE ENTERPRIZES, INC. d/b/a
LARRY'S FOODLAND, a Michigan
corporation,

        Plaintiff,

v.

AXA RE PROPERTY AND CASUALTY
INSURANCE COMPANY,

        Defendant.

Case No. 04-75099
Honorable Patrick J. Duggan

_____/

## OPINION

This action arose after the Defendant, AXA Re Property and Casualty Insurance Company ("AXA"), denied Plaintiff's claim of loss following the mass blackout that occurred on August 14, 2003. Plaintiff filed suit against Defendant AXA in the Wayne County Circuit Court bringing claims for: (I) declaratory relief pursuant to MCR 2.605; and (II) breach of contract. Defendant removed this case to this Court on the basis of diversity jurisdiction. The following motions are before the Court: (1) Defendant's Motion for Summary Judgment; and (2) Plaintiff's Motion for Declaratory Relief and for Summary Judgment. The Court held a hearing on this motion on October 27, 2005.

**I.    Background**

Plaintiff operates a grocery store, Larry's Foodland, which is located in Livonia, Michigan. The store is opened 24 hours a day. Larry Lokuta is the store's president and sole

shareholder.

## A. The Blackout

Detroit Edison supplies electrical power to Larry's Foodland. On August 14, 2003, Larry's Foodland lost power during a massive blackout that affected Southeast Michigan, Ohio, Pennsylvania, New York, and Canada. Larry's Foodland was without power for approximately 38 hours. (Pl.'s Mot. Ex. 1, Lokuta Dep. at 49-50).

During the blackout, Larry's Foodland closed its doors for business. However, because there was no way of knowing how long the blackout would last, employees came to work and were paid as usual. Larry's Foodland estimates that it lost $102,567 in stock, $7,000 in lost business income, and incurred $3,642.92 in expenses related to the loss of power. (Pl.'s Mot. Ex. 10).

## B. The Insurance Policy

At the time of the blackout, Larry's Foodland had an insurance policy with AXA. The Policy provides, in pertinent part:

**A. COVERAGE**

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

(Pl.'s Mot. Ex. 18, AXA Policy). The Policy definition of Covered Property includes "Business Personal Property located in or on the buildings at the described premises," including "[p]roperty you own that is used in your business." (*Id.* at ¶A(1)(b)(1)). The AXA Policy contains the following exclusion:

**B. Exclusions**

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

\* \* \*

    **c. Power Failure**

    The failure of power or other utility service supplied to the described premises, however caused, if the failure occurs away from the described premises.

    But if failure of power or other utility service results in a Covered Cause of Loss,[1] we will pay for the loss or damage caused by that Covered Cause of Loss.

(*Id.* at ¶B(1)(c).

In the event of a covered loss, the Policy requires AXA to pay for costs of debris removal (*id.* at ¶A(5)(a)), lost business income (*id.* at ¶A(5)(f)), and extra expenses incurred, including the cost to repair or replace any property (*id.* at ¶A(5)(g)).

On October 27, 2003, AXA sent a letter denying Larry Foodland's claim for benefits because it found that the "[l]oss of the food product is the result of thawing and appears not to be the result of a Covered Cause of Loss as defined in the policy. The loss was caused by a power outage of undetermined origin." (Pl.'s Mot. Ex. 16).

**II. Standards of Review**

    **A. Motion for Declaratory Judgment**

This Court has authority to grant declaratory relief pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201. The Declaratory Judgment Act states that

---

[1] The AXA Policy defines "Covered Cause of Loss" as "Risks of Direct Physical Loss unless the loss is . . . [e]xcluded in Section B., Exclusions." (Pl.'s Mot. Ex. 18 at ¶A(3)(a))

"[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201. However, "[a] declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest." *Eccles v. Peoples Bank*, 333 U.S. 426, 431, 68 S. Ct. 641, 644 (1948).

The Sixth Circuit applies two principal criteria to determine whether a declaratory ruling is appropriate: "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Grand Trunk. W. Railroad Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984). In addition, the Sixth Circuit considers the following factors in determining whether to grant declaratory relief:

(1) Whether the judgment would settle the controversy;

(2) Whether the declaratory action would serve a useful purpose in clarifying the legal relations at issue;

(3) Whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata";

(4) Whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach on state jurisdiction; and

(5) Whether there is an alternative remedy that is better or more effective.

*Id.*

In this case, a declaratory judgment would clarify and settle the issue of whether Plaintiff's losses were covered by Defendant's policy. Moreover, a declaratory judgment would terminate and afford relief from the controversy giving rise to this proceeding. Thus,

4

the first two factors are met.

As to the third factor, there is no evidence that a declaratory remedy is being used to "provide an arena for a race for res judicata," especially since there is no competing state action pending. Similarly, as to the fourth factor, the use of a declaratory action would not increase friction between federal and state courts. Finally, no alternative remedy has been suggested. Therefore, this Court shall exercise its discretion to declare whether Plaintiff's losses were covered by Defendant's policy.

### B. Motion for Summary Judgment

This Court will grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). No genuine issue of material fact exists for trial unless, by viewing the evidence in a light most favorable to the nonmoving party, a reasonable jury could return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). The moving party bears the burden of informing this Court of the basis for its motion and identifying those portions of the record that establish the absence of a material issue of fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986).

Once the moving party has met its burden, Rule 56(e) requires the nonmoving party to look beyond the pleadings and designate specific facts showing that a genuine issue exists for trial. FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 322-24, 106 S. Ct. at 2552-53. It is not enough that the nonmoving party comes forward with the "mere existence of a scintilla of

evidence . . . ," *Anderson*, 477 U.S. at 252, 106 S. Ct. at 2512, or some "metaphysical doubt as to the material facts." *Matsishita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986). Rather, the nonmoving party must present significant probative evidence in support of its opposition to the motion for summary judgment. *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993).

**III. Applicable Law and Analysis**

To prevail on its breach of contract claims against Defendant AXA, Plaintiff must prove:

1. That a contract existed between Plaintiff and Defendant;

2. Defendant breached the obligations it owed Plaintiff under the contract; and

3. Plaintiff suffered damages as a result of the breach.

*See In re Brown*, 342 F.3d 620, 628 (6th Cir. 2003).

In this case, there is no dispute that, at the time of the blackout, Plaintiff was covered by the insurance policy with Defendant. At issue is whether Defendant breached its obligation by denying Plaintiff's claim of loss.

The Policy requires AXA to "pay for direct and physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." (Pl.'s Mot. Ex. 18 at ¶A). Covered Property means "Business Personal Property located in or on the buildings at the described premises," including "[p]roperty you own or that is used in your business." (*Id.* at ¶A(1)(b)(1)). The AXA Policy also requires AXA to pay for costs of debris removal, lost business income, and extra expenses incurred, including the cost to repair or replace any property. (*Id.* at ¶A(5)).

6

Plaintiff contends that it suffered direct physical loss of or damage to its perishable stock, which constitutes business personal property, in the amount of $102,567. Plaintiff also seeks to recover $15,000 in lost business income, the additional expense of replacing its stock ($102,567), paying its employees during the outage ($3,642.92), and fixing equipment damaged by the outage ($403).

Defendant AXA contends that its Policy excludes loss caused by power failure, citing the following provision:

> **B. Exclusions**
>
> 1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.
>
>    \* \* \*
>
>    **e. Power Failure**
>
>    The failure of power or other utility service supplied to the described premises, however caused, *if the failure occurs away from the described premises.*

(Pl.'s Mot. Ex. 18, AXA Policy (emphasis added)).

In this case, the power failure undisputedly occurred away from the premises. Therefore, Defendant contends that the AXA Policy does not cover Plaintiff's losses.

However, Plaintiff argues that its losses are covered by the exception to this exclusion, which provides: "But if failure of power . . . results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss." (Pl.'s Mot. Ex. 18, AXA Policy). Defendant contends that this exception to the power failure exclusion was meant to cover, for example, a fire which occurred as a result of the power failure and damaged the

food products. (Def. AXA's Br. in Supp. of Mot. at 10). In other words, Defendant contends that a "Covered Cause of Loss" is a risk or peril covered by the policy, i.e., not excluded by the policy. It is referring to an "independent" risk or peril, which risk or peril causes damage to the Covered Property.

In *Gies v. City of Gering*, 695 N.W.2d 180 (Neb. Ct. App. 2005), the Court found that power failure exclusion language identical to the language in the AXA policy precluded coverage. In *Gies*, a broken cable on a utility transformer several blocks away from the insured's property caused the loss of one phase of the three-phase power being supplied to the insured property. *Id.* at 184. Eventually, the continued operation of several electric motors during the event, referred to as a "single-phase disturbance," caused the electric motors to overheat and stop working. *Id.* The damaged motors were used to power refrigeration equipment. *Id.* The power failure exclusion language at issue in *Gies* is identical to the language in the AXA policy: "But if failure of power . . . results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss." *See id.* at 184-85. The *Gies* Court found that there was no ambiguity in the exclusionary language. *Id.* at 185. The *Gies* Court reasoned that this exception to the exclusion "would be applicable if a power failure resulted in any risk of direct physical loss or damage that is neither a limitation nor an exclusion under the terms of the policy and which risk caused loss or damage." *Id.* at 195. The *Gies* Court concluded that because the power failure, in that case, did not result in a covered cause of loss, the exception to the exclusion was not applicable. *Id.*

*Gies* referred to and relied on, to some extent, *Weeks v. Co-Operative Ins.Cos.*, 149

N.H. 174, 817 A.2d 292 (2003). In *Weeks*, The Supreme Court of New Hampshire analyzed an insurance policy which excluded damage caused by negligent workmanship but provided that, if the "excluded cause of loss" resulted in a Covered Cause of Loss, the insurer would "pay for the loss or damage caused by that Covered Cause of Loss." *Id.* at 174, 817 A.2d at 294. In that case, the insurance company had denied the plaintiff's claim of loss for damage to property as a result of negligent workmanship. *Id.*, 817 A.2d at 294. In concluding that there was no coverage, the *Weeks* Court held that "the negligent work exclusion barred coverage, even though that exclusion contained an exception providing coverage if an excluded cause of loss resulted in a covered cause of loss because there was <u>no covered cause of loss separate and independent from the faulty workmanship</u>." *Gies*, 13 Neb. App. at 439, 695 N.W.2d at 192 (emphasis added) (citing *Weeks*, 149 N.H. at 175, 817 A.2d at 295).

Because the AXA policy includes identical language to that contained in the policy involved in *Gies*, Defendant contends that the Court should find that it excludes Plaintiff's loss resulting from the power failure. The Court agrees. Because the failure of power occurred away from Larry's Foodland and did not result in a Covered Cause of Loss, the exception to the AXA policy's power failure exclusion is not applicable. Consequently, the exclusion precludes coverage for all of Plaintiff's losses.

Accordingly,

**IT IS ORDERED** that Defendant AXA Re Property and Casualty Insurance Company's Motion for Summary Judgment is **GRANTED**.

9

**IT IS ORDERED** that Plaintiff Lyle Enterprizes, Inc.'s Motion for Declaratory Relief and for Summary Judgment is **DENIED**.

                                        s/PATRICK J. DUGGAN
                                        UNITED STATES DISTRICT JUDGE

Date: November 18, 2005

Copies to:
Leif Anderson, Esq.
Stanley A. Prokop, Esq.